**CHAMBERS OF**
**STEPHANIE A. GALLAGHER**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7780**
**Fax (410) 962-1812**

September 27, 2013

LETTER TO COUNSEL:

> RE: *Joanne Elizabeth Groseclose v. Commissioner, Social Security Administration*;
> Civil No. SAG-13-0200

Dear Counsel:

On January 18, 2013, the Plaintiff, Joanne Elizabeth Groseclose, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 12, 14). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will deny both motions, vacate the Commissioner's denial of benefits, and remand this matter for further proceedings consistent with this opinion. This letter explains my rationale.

Ms. Groseclose filed her claim for benefits on December 21, 2009, alleging disability beginning April 1, 2008. (Tr. 131-38). Her claims were denied initially on July 31, 2010, and on reconsideration on December 28, 2010. (Tr. 60-64, 68-69). A hearing was held on September 26, 2011, before an Administrative Law Judge ("ALJ"). (Tr. 24-57). Following the hearings, on October 11, 2011, the ALJ determined that Ms. Groseclose was not disabled during the relevant time frame. (Tr. 9-23). The Appeals Council ("AC") denied Ms. Groseclose's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Groseclose suffered from the severe impairments of status post thyroidectomy, carpal tunnel syndrome, and obesity. (Tr. 14). Despite these impairments, the ALJ determined that Ms. Groseclose retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404/1567(b) except she can occasionally finger and handle objects with her right hand." (Tr. 15). The ALJ determined that Ms. Groseclose was not able to perform her past relevant work as a legal secretary, real estate officer/closer, and a waitress. (Tr. 17). However, after considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Groseclose was capable of performing other jobs existing in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 17-18).

Ms. Groseclose presents three arguments on appeal: (1) that the ALJ failed to assign proper weight to the opinion of treating physician, Dr. Njideka Udochi; (2) that the case should be remanded for consideration of new and material evidence; and (3) that the ALJ failed to re-contact a consultative examiner who did not account for Ms. Groseclose's carpal tunnel

syndrome. While Ms. Groseclose's latter two arguments are unpersuasive, I agree that the ALJ did not sufficiently explain his assignment of "little weight" to the opinion of Dr. Udochi.

Turning first to the unpersuasive arguments, Ms. Groseclose asserts that under SSR 96-6p, the ALJ or AC should have returned her case to the state agency for review of new and material evidence. Pl. Mot. 9-10. SSR 96-6p requires the ALJ or AC obtain an updated medical expert opinion "[w]hen additional medical evidence is received that in the opinion of the [ALJ] or [AC] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to . . . [a] Listing." SSR 96-6p, 1996 WL 374180, at *3-*4. Ms. Groseclose makes no effort to argue that her impairments meet or are equivalent to any Listing, and without evidence of that, SSR 96-6p is inapplicable.

Instead, she argues that the "definitive diagnosis" of dermatomyositis made after the hearing is new and material evidence. The record reflects that the AC both received and considered the new evidence. (Tr. 1-5). The AC only has to consider evidence that is both new, meaning not duplicative or cumulative, and material, meaning that there is "a reasonable possibility that the new evidence would have changed the outcome." *Meyer v. Astrue,* 662 F.3d 700, 705 (4th Cir. 2011). Although Ms. Groseclose believes the evidence warranted a different result, she does not argue the records demonstrated either a worsening of her impairments or an escalation of her functional limitations. My review of that evidence suggests that it would not have changed the outcome of the ALJ's decision. The November 7, 2011 letter from Dr. Udochi is entirely duplicative of her previous letters and the opinion expressed in her medical assessment form. Similarly, Dr. Gopinath's letter summarizes Ms. Groseclose's reported ongoing symptoms and largely normal test results, and concludes that she "continues to have multisystem symptoms for which we do not yet have a unifying diagnosis." (Tr. 1097-98). Ms. Groseclose believes that the dermatomyositis diagnosis,[1] (Tr. 1126-29), warrants evaluation by the state agency. However, it is not clear that that diagnosis demonstrated a change in her symptoms. Dr. Louie's report simply states that he agrees with the presumptive dermatomyositis diagnosis based on her reported symptoms, but that "today's EMG was completely normal"[2] and "[s]he has only mildly elevated CK with a normal aldolase in the past."[3] (Tr. 1128). Moreover, "the regulatory scheme

---

[1] "Dermatomyosistis is an uncommon inflammatory disease marked by muscle weakness and a distinctive skin rash." *Dermatomyositis*, Mayo Clinic,
http://www.mayoclinic.com/health/dermatomyositis/DS00335.

[2] An electromyography (EMG) is used to test the health of muscles and nerves to determine the distribution of the disease. *See Dermatomyositis: Tests and Diagnosis*, Mayo Clinic,
http://www.mayoclinic.com/health/dermatomyositis/DS00335/DSECTION=tests-and-diagnosis;
*Electromyography*, MedlinePlus Medical Encyclopedia,
http://www.nlm.nih.gov/medlineplus/ency/article/003929.htm.

[3] "A blood test will let your doctor know if you have elevated levels of muscle enzymes, such as creatine kinase (CK) and aldolase. Increased CK and aldolase levels can indicate muscle damage."
*Dermatomyositis: Tests and Diagnosis*, Mayo Clinic,
http://www.mayoclinic.com/health/dermatomyositis/DS00335/DSECTION=tests-and-diagnosis.

does not require the [AC] to do anything more than what it did in this case, *i.e.,* 'consider new and material evidence . . . in deciding whether to grant review.'" *Meyer v. Astrue,* 662 F.3d at 706. The AC is not required to take any specific action in response to that new and material evidence, and is not required to provide a detailed explanation of its evaluation. *Id.* I cannot therefore conclude that the AC discharged its duties improperly.

Next, Ms. Groseclose argues the ALJ committed reversible error in failing to recontact a consultative examiner. Pl. Mot. 10-12. Ms. Groseclose cites former 20 C.F.R. § 404.1512(e)[4] for the proposition that the ALJ had a duty to recontact consultative examiner Dr. Rafael Gomez who omitted her contemporaneous carpal tunnel syndrome diagnosis from his RFC assessment. Her argument is without merit. First, 20 C.F.R. 404.1512(e) is inapplicable as it addresses situations where evidence from a claimant's treating physician or medical source needs to be clarified, not information from a consultative examiner hired by the SSA or state agency. Second, the ALJ included a limitation in Ms. Groseclose's RFC accounting for the mild carpal tunnel syndrome in her right wrist. An ALJ need not parrot a single medical opinion in determining an RFC or any part of the RFC. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Felton-Miller v. Astrue,* 459 F.App'x 226, 230-31 (4th Cir. 2011) (determining that an ALJ need not obtain an expert medical opinion as to an RFC, but should base an RFC on all available evidence). Here, the ALJ included a right hand limitation in his RFC determination after considering all of the relevant evidence — including Ms. Groseclose's own testimony, (Tr. 42), and the opinions from both Dr. Gomez and treating physician Dr. Udochi that Ms. Groseclose had no limitation in her manipulative abilities. (Tr. 875, 1095). I find no cause for remand here.

However, I agree that the ALJ improperly discounted the opinion of Ms. Groseclose's treating physician Dr. Udochi. Pl. Mot. 6-9. Although the opinion of a treating physician can be entitled to controlling weight, such an opinion is not entitled to such weight if it is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Moreover, the ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(2); SSR 96-5p. Dr. Udochi opined in a medical assessment form that while Ms. Groseclose had no limitations in her ability to stand, walk, sit, or carry and lift objects, she was unable to work because she would need to lie down two hours in each normal workday. (Tr. 1093-96). Her handwritten note at the end of the form is difficult to decipher, but she appears to support her conclusions with only a cryptic explanation that Ms. Groseclose has persistent aches and fatigue. (Tr. 53-54, 1093-96). Dr. Udochi also wrote in a letter "to whom it may concern" that Ms. Groseclose developed extreme fatigue, multiple joint pain, and lesions in July, 2008, and further that she "has not been able to work secondary to her protracted medical problems." (Tr. 1039). The ALJ found Dr. Udochi's opinions unpersuasive and assigned them "little weight" because: (1) the opinion expressed in the medical assessment form contradicted itself and was inconsistent with the record, and (2) the

---

[4] The SSA published an updated final rule regarding the development of evidence and the procedure for resolving any inconsistency or insufficiency in the evidence provided by a claimant's treating medical source on February 23, 2012. *See* 77 Fed. Reg. 10651 (Feb. 23, 2012).

letter was similarly inconsistent with the record and Ms. Groseclose's self-reported activities. (Tr. 16). While I agree that the opinion expressed in the medical assessment form was internally inconsistent to the point of being nonsensical, the ALJ did not offer any explanation as to what in the medical record contradicted Dr. Udochi's opinion. The Commissioner highlights a plethora of records that contradict Dr. Udochi's unsupported opinions, from both the doctor's own treatment notes and various other largely normal clinical findings and lab results, Def. Mot. 19-21, however, the ALJ failed to provide such analysis. Because the ALJ failed in his duty of explanation, I cannot find the ALJ's assignment of "little weight" to the opinion of Ms. Groseclose's treating physician was based on substantial evidence.

In the entire opinion, the ALJ offers just two paragraphs analyzing the more than 900 pages of medical evidence. In those paragraphs, he highlights a handful of medical records that seemingly undermine Ms. Groseclose's claims. However, I find even his scant analysis problematic. First, the ALJ points to noncompliance with Ms. Groseclose's "hyperthyroid medication" as an explanation for her constant fatigue and weight gain. (Tr. 16, 434-36). The treatment note in question actually states that she was not compliant with her hypertension medication, s*ee* (Tr. 435) ("HTN: not compliant with medications; not taking her lisinopril" and "Hypothyroid: [continue with] synthroid" [5]), and the ALJ cites to no medical source to support his inference that such noncompliance could cause fatigue and weight gain. Second, he goes on to contradict himself in the same paragraph by offering that Ms. Groseclose's thyroid medication "likely adds to her fatigue." (Tr. 16). Ultimately, I am unable to find that such cursory treatment of Ms. Groseclose's medical records allow me to adequately trace the ALJ's logic. Remand is therefore warranted. In so finding, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Groseclose was not entitled to benefits was correct or incorrect.

For the reasons set forth herein, the Plaintiff's motion for summary judgment (ECF No. 12) and the Commissioner's motion for summary judgment (ECF No. 14) will be DENIED, the decision of the ALJ will be VACATED, and the case will be REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

[5] "HTN" is the abbreviation for hypertension. *Appendix B: Some Common Abbreviations*, MedlinePlus Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/appendixb.html.